# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JIMMIE JOHNSON,** | ) | **CASE NO. 1:16-cv-02189** |
| | ) | |
| **Petitioner,** | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE** |
| | ) | **KATHLEEN B. BURKE** |
| **LASHANN EPPINGER,** | ) | |
| **Warden,** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | ) | |
| | ) | |

Petitioner Jimmie Johnson ("Petitioner" or "Johnson"), through counsel, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").[1]  Doc. 1.  Johnson challenges the constitutionality of his convictions and sentences following a guilty plea in Cuyahoga County Case No. Cr-10-537345.

In October of 2009, a complaint was filed in juvenile court alleging Johnson, age 15, purposely caused the death of another individual.  *State v. Johnson*, 2015-Ohio-96 ¶ 2 (2015).  In May 2010, Johnson was bound over to the general division of the Cuyahoga Court of Common Pleas and he was subsequently indicted on one count of murder, two counts of felonious assault, and two counts of attempted felonious assault, with all charges carrying one-and three-year firearm specifications.  *Id*. at ¶ 24.  In February 2011, Johnson pleaded guilty to an amended indictment of involuntary manslaughter and two counts of felonious assault, with all counts carrying a three-year firearm specification.  *Id.* at ¶ 25.  The trial court sentenced Johnson to a total of eighteen years imprisonment.  *Id.* at ¶ 26.

---

[1] Petitioner filed a previous habeas petition on July 1, 2015.  *See* Case No. 15-cv-01322.  The petition was dismissed without prejudice for failure to prosecute, Case No. 15-cv-01322, Doc. 4.

Johnson brings this habeas petition claiming that his federal constitutional due process rights were violated because the state failed to provide speedy trial protections to him as a juvenile and that he received constitutionally ineffective assistance of counsel based on his trial counsel's failure to file a motion to dismiss based on a violation of Johnson's speedy trial rights. Doc. 1, pp.15, 19.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. On May 12, 2017, Respondent filed an Answer/Return of Writ. Doc. 5. On June 26, 2017, Johnson filed a Traverse. Doc. 7.

For the reasons set forth below, the undersigned recommends that the Court **DISMISS** and/or **DENY** Johnson's Petition (Doc. 1).

## I.     Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) cert. denied, 129 S. Ct. 2878 (2009).

The Ohio Eighth District Court of Appeals summarized the facts leading up to Johnson's guilty plea as follows:

{¶ 2} On October 20, 2009, a complaint was filed in the Cuyahoga County Court of Common Pleas, Juvenile Division, alleging the following:

Jimmie Johnson, a child of about the age of 15, is a delinquent child, as defined in ORC 2152.02(F), because on or about Sept. 22, 2009, in the vicinity of 6207 Broadway Ave., Cleve., Ohio, he purposely caused the death of Jerry Goodwin, in violation of ORC 2903.02, an unclassified felony.

{¶ 3} The complaint further alleged one- and three-year firearm specifications.

{¶ 4} On January 21, 2010, the state moved for the juvenile court to relinquish jurisdiction under R.C. 2152.10(B) and requested a hearing under Juv.R. 30(A), arguing that "there is probable cause" that Johnson committed the act of murder alleged in the complaint and that "there may be reasonable ground to believe that [Johnson] is not amenable to rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children."

*Probable Cause Hearing*

{¶ 5} On March 15, 2010, the juvenile court held a joint probable cause hearing for both Johnson and D.S., who was also charged in connection with the shooting on September 22, 2009. The state offered the testimony of two witnesses: C.M. and Ch.M.—both age 17. According to the witnesses' testimonies, Johnson shot Jerry Goodwin ("Jerry") on the night of September 22, 2009. C.M. testified that, after Johnson and Jerry started arguing, Johnson told his friend, D.S., "Give me my gun," which D.S. did, and then Johnson shot Jerry.

{¶ 6} Similarly, Ch.M. testified that once D.S. had the gun in his hand, "[t]hen [Johnson] like, No, nigga, give me my gun. So [D.S.] pass it off to [Johnson]." According to Ch.M., three gunshots were initially fired and came from Johnson "because he was the only person who had the gun." On cross-examination, Ch.M. admitted that he was arrested for the murder of Jerry but the charges were later dropped.

{¶ 7} Following the hearing, the juvenile court determined that there was probable cause to believe that Johnson committed the act charged and referred Johnson to the juvenile court clinic for an evaluation.

*Amenability Hearing*

{¶ 8} On May 6, 2010, the court held an amenability hearing to determine if Johnson could remain within the juvenile justice system or be bound over to the adult court. At the time of the amenability hearing, Johnson was 16 years of age. The state presented two witnesses: Eleanor Goodwin, the victim's mother, and Mary Rodgers, an investigative probation officer.

{¶ 9} Goodwin testified as to her son being a good student, "a happy young man," who "didn't bother people." Goodwin further testified that her son wanted to go to college and either be a football player or a lawyer. Goodwin also indicated that her son had one "run-in" with the law where he spent two months in a juvenile detention center after the police found a bag of marijuana on him. According to Goodwin, Jerry changed after spending time in juvenile detention; he went to work at the church. The state also elicited testimony from Goodwin as to the impact of Jerry's death on her and her family. Goodwin expressed difficulty in accepting that Jerry was gone and that the loss was "really hard."

{¶ 10} Rodgers testified that she is employed by the Cuyahoga County Juvenile Court as an investigative probation officer and that she conducted a "social history"

of Johnson, prior to his psychological evaluation. According to Rodgers's investigation, Johnson had "several suspensions, not this year, but dating back to 2004." Specifically, Johnson was suspended in 2004 and in 2005, while at Mound Elementary School, for "more than one person acting to harm another" and for "fighting, pushing, or hitting another student." In October 2008, while at South High School, he was suspended for "not adhering to school culture or directives." Finally, on April 6, 2009, and April 28, 2009, also during his ninth grade year at South High, Johnson was suspended each time for the same offense of "more than one person acting to harm another."

{¶ 11} Rodgers further testified that Johnson did not have attendance problems at school until his sophomore year, and that he had been "truant for the majority of the school year." Johnson's absence from school was unexcused from August 27, 2009 until October 21, 2009, and he started at the detention center on October 27, 2009. Rodgers also explained that Johnson denied being involved in any gang but indicated that "a lot of his family and friends are gang involved." She further testified that Johnson admitted to regular drug use; "he stated he's been smoking marijuana since age 15," smoking two marijuana blunts every other day.

{¶ 12} Johnson presented four witnesses on his behalf. First, Johnson offered the testimony of Jayson Heaggans, who coached Johnson for years in the Cleveland Municipal League for football. According to Heaggans, Johnson was "never a problem" and "never gave [Heaggans] any attitude." Heaggans described Johnson as "very respectable" and "a leader." Heaggans further testified that he would mentor Johnson after the football seasons.

{¶ 13} John Story, a "linkage coordinator" at South High School, testified that he first met Johnson the summer before Johnson's ninth grade year when Johnson voluntarily participated at math camp for a few weeks. Story continued to interact with Johnson during his time at South High. According to Story, he never saw any signs of Johnson being involved in a gang, despite another teacher thinking otherwise. Story also testified that he was not aware of Johnson having any issues at home.

{¶ 14} Keith Hubbard testified that he considered himself to be a surrogate father to Johnson. At the time of the hearing, Hubbard had lived with LaTanya Hobbs (Johnson's mother) for approximately six years. According to Hubbard, Johnson always respected Hobbs and him and has not had any problems in school. Hubbard, who owns a painting and lead and asbestos removal business, testified that Johnson has worked for him, helping with painting, clean up, and demolition.

{¶ 15} Johnson's mother, Hobbs, testified that Johnson is her youngest of four children and that he had "perfect attendance" at school. Hobbs stated that Johnson was a merit roll and honor roll student in middle school. Hobbs further testified that Johnson has received several awards in both school and sports. Hobbs described Johnson as "smart, intelligent, spoiled," explaining that she has spoiled him. Hobbs

further testified that Johnson has never been in trouble before and was not involved with any gangs. On cross-examination, Hobbs acknowledged that the perfect attendance was "aside from his two suspensions in ninth grade for fighting."

{¶ 16} The parties also stipulated to Johnson's psychological evaluation and report prepared by Dr. Joseph Konieczny, that the juvenile court accepted into evidence. According to Dr. Konieczny's evaluation, "there is no indication that [Johnson] suffers from any major mental or psychiatric disorder that is affecting his ability to perceive reality." Dr. Konieczny described Johnson as "polite and cooperative" and "very soft-spoken." He further indicated that Johnson's "ability to concentrate and to attend to task appeared to be quite adequate." Dr. Konieczny further stated that, based on Johnson's test results, Johnson's intellectual capabilities "lie in the average range."

{¶ 17} In his report, Dr. Konieczny offered no specific recommendation as to Johnson's amenability to the juvenile justice system. He did however identify the following five factors that

should be regarded as indicators that [Johnson] would be responsive to the care and rehabilitative services available through the juvenile justice system:

1.  Jimmie has had no previous history of delinquency.

2.  Jimmie has never received any services through the juvenile justice system. He has never been placed on probation program services. He has never been committed to the Youth Development Center or to a facility of the Ohio Department of Youth Services.

3.  Jimmie has had no significant history of problematic behaviors in the school setting.

4.  Jimmie has had no previous history of significant predatory, aggressive, or assaultive behaviors.

5.  At the age of 16 years and 11 [sic] months, Jimmie is well below the age of majority.

{¶ 18} Dr. Konieczny further identified the following two factors as indicators that Johnson

would not be responsive to the care and rehabilitative services available through the juvenile justice system:

1. The act which Jimmie has been charged allegedly involved the use of a handgun.

5

2. The act which Jimmie has been charged resulted in the death of the alleged victim.

{¶ 19} With respect to whether Johnson is physically, emotionally, and psychologically mature enough for a transfer to adult court, Dr. Konieczny offered no opinion, indicating that the "scope and focus of this evaluation cannot address these issues."

{¶ 20} At the conclusion of the hearing, the court stated the following on the record:

> All right. The Court had a chance to—First of all, for the record, the Court had a chance to read the entire psychological evaluation that was completed by Dr. K. The report date for that was April 23rd of this year.
>
> Also, the Court had a chance to review all of the factors under Section 2152.12 of the Ohio Revised Code that the Court must consider in these cases. So there are a number of factors that the Court had to look at that would be in favor of binding him over and there are a number of factors that would be in favor of keeping him in Juvenile Court.
>
> So having weighed all of those factors, the Court at this time—And one more thing for the record. The Court also before we even started this hearing had a chance to review its notes that were taken by this Court at the probable cause hearing, which was held in March.
>
> So taking that all into consideration, the Court at this time feels that Jimmie is not amenable to the juvenile justice system. And would just note at this time that the key factor which the Court gave a lot of weight to was the fact that the Court feels there is not sufficient time to rehabilitate the child within the juvenile system. And the reason the Court put a lot of weight into that is because of the incident itself, the allegation that he actually did shoot and kill the other boy.
>
> So at this time, based on my finding right now that he is not amenable to the juvenile justice system, the Court will transfer Jimmie to the adult system where he will be tried as if he were an adult.

{¶ 21} Following the court's ruling, the state moved to dismiss the pending complaint containing an aggravated riot charge against Johnson.[1]

> [FN1] The record reveals that Johnson allegedly was charged with aggravated rioting due to an incident that occurred while at the Juvenile Detention Center.

{¶ 22} The following day, the juvenile court issued a journal entry, setting forth its findings in writing. The juvenile court listed the following four factors under R.C. 2152.12(D) as applying in this case in favor of transfer:

> [1.] The victim suffered physical or psychological harm, or serious economic harm.

> [5.] The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

> [8.] The child is emotionally, physically, or psychologically mature enough for the transfer.

> [9.] There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 23} The juvenile court further considered the relevant factors weighing against transfer under R.C. 2152.12(E), finding that the following factor applied:

> [5.] The child previously has not been adjudicated a delinquent child.

*Transfer of Jurisdiction*
{¶ 24} In May 2010, Johnson was bound over to the general division of the Cuyahoga County Court of Common Pleas after the juvenile court determined that he was "not amenable to care or rehabilitation within the juvenile court system." The grand jury subsequently indicted him with one count of murder, two counts of felonious assault, and two counts of attempted felonious assault, with all the charges carrying one- and three-year firearm specifications.

*Guilty Plea and Sentence*
{¶ 25} In February 2011, Johnson pleaded guilty to an amended indictment of involuntary manslaughter and two counts of felonious assault, with all counts carrying a three-year firearm specification.

{¶ 26} In March 2011, the trial court imposed ten years on the involuntary manslaughter count to run consecutive to the three-year firearm specification and to the concurrent five-year terms on the felonious assault convictions, for a total sentence of 18 years.

*State v. Johnson*, 2015-Ohio-96, ¶¶ 2-26, 27 N.E.3d 9 (Ohio Ct. App. Jan. 15, 2015) (alterations

in original); Doc. 5-1, pp. 220-52 (Exhibit 26).

## II.    Procedural Background

### A.    Juvenile Court Proceedings

As outlined by the state court of appeals in its January 15, 2015, opinion, on October 20, 2009, a complaint was filed in the Cuyahoga County Court of Common Pleas' juvenile division alleging that Johnson purposely caused the death of another individual.  *Johnson*, 2015-Ohio-96, ¶¶ 2-3.  Following a probable cause hearing on March 15, 2010, and an amenability hearing on May 6, 2010, on May 7, 2010, the juvenile court concluded that Johnson was not amenable to the juvenile justice system and Johnson was transferred to the adult system to be tried as an adult. *Id.* at ¶¶ 4-24, Doc. 5-1, pp. 4-5 (Exhibit 1).

### B.    State Conviction and Sentencing

Once Johnson was bound over to the Cuyahoga Court of Common Pleas, a Grand Jury indicted Johnson on five counts: Count 1 – murder; Counts 2 and 4 – attempted felonious assault; and Counts 3 and 5 – felonious assault.  Doc. 5-1, pp. 6-10 (Exhibit 2).  Each count included one- and three- year firearm specifications.  *Id*.  Johnson pleaded not guilty to the charges.  Doc. 5-1, p. 11 (Exhibit 3).

On July 6, 2010, Johnson waived his right to a speedy trial, consenting to continuance of the trial until January 10, 2011.  Doc. 5-1, p. 12 (Exhibit 4).  During the next several months, the trial court granted eight continuances for various reasons at the request of the defendant or both parties.  Doc. 5-1, pp. 13-20 (Exhibit 5).  On December 23, 2010, Johnson again waived his rights to a speedy trial from December 23, 2010, until March 31, 2011.  Doc. 5-1, p. 20, Doc. 5-1, p. 21 (Exhibit 6).

In February of 2011, after negotiations with the State, Johnson withdrew his not guilty plea and pleaded guilty to an amended indictment of involuntary manslaughter and two counts of

felonious assault, each with a three-year firearm specification.  Doc. 5-1, p. 22 (Exhibit 7).

There was an agreed sentence of eighteen-years.  Doc. 5-1, p. 22.  On March 7, 2011,[2] the trial

court sentenced Johnson to an aggregate eighteen-year prison sentence: three years on the

firearm specifications, consecutive with ten years for involuntary manslaughter, and five years

for the two counts of felonious assault.  Doc. 5-1, p. 23 (Exhibit 8).

**C.      Post-Conviction Relief**

**1.      First Petition**

On October 4, 2012, Johnson, acting pro se, filed a "('Delayed') Post-Conviction Petition

pursuant to Revised Code 2953.21" (Doc. 5-1, pp. 24-47 (Exhibit 9)), raising four grounds for

relief:

1.  On July 6, 2010 the petitioner counsel filed a speedy trial waiver on behalf of
    the petitioner. Nonetheless, no trial date was scheduled to begin with for waiver
    to be filed or submitted to clerk. However, the counsel's waiver continued the
    procedure from July, 6, 2010 to January 10, 2011, six months away and way
    pass the time period prescribed by the Ohio Revised Code 2945.71. Again, the
    petitioner's first trial date was not even scheduled for a speedy trial waiver to
    be issued or filed, was error, see Exhibit – (A) attached hereto, see also, State
    v. Gray (1964), 1 Ohio St.2d 21,203 N.E2d 319. This also violated petitioner's
    Sixth Amendment rights of the United States Constitution to have a speedy trial.

2.  On November 17, 2011 final pretrial was held and the case was set for trial on
    December 13, 2010 at 9:A.M. instead the trial court restared its pretrial on
    December 20, 2010 and never resumed to the December 13, 2010 first trial date,
    see, Exhibit – (B) at page 4 at December 13, 2010. Trial was called this date,
    and counsel for the petitioner filed another speedy trial waiver, this was error
    and a clear-cut of ineffective assistance of counsel. On December 23, 2010 a
    pretrial was held and another speedy trial waiver was filed to be continued from
    December 23, 2010 to March 31, 2011, this was error commited by the trial
    court, and ineffective assistance of counsel, and another speedy trial violation
    and constutes a gross abuse of discretion, and the petitioner was denied his
    rights to have a fair trial. This was the second speedy trial waiver filed, see,
    Exhibit – (C) attached hereto, this violates the petitioner's Sixth Amendment
    right of the United States Constitution to have a fast and speedy trial, and the
    petitioner's Sixth Amendment rights to have effective assistance of counsel, in
    which denied the petitioner the fruits of having a fair trial, see, Lockhart v.

---

[2] The journal entry was docketed on March 14, 2011.  Doc. 5-1, p. 23.

Fretwell (1993), 506 U.S.364, 113 S.Ct.838; Direct Plumbing Supply Co. v. Dayton (1941), 38 Ohio St.540, 38 N.E.2d 70; State v. Buchanan (1974), 410 Ohio App.2d 181, 324 N.E.2d 503; see, also State v. Pudlock (1975), 44 Ohio St.2d 104, 338 N.E.2d 524. See, also, Exhibit – (C) attached hereto.

3. On December 27, 2010 a speedy trial waiver was filed, this was the third speedy trial waiver filed in the same proceedings, see, Exhibit – (B) at page 4 at December 27, 2010, this was error and violated the petitioner's speedy trial rights again, this also was gross abuse of discretion and ineffective assistance of counsel for counsel's failure to file a motion for dismissal for want of prosecution, in which violated the petitioner's due process rights of the Fourteenth Amendment of the United States Constitution. The petitioner argues in his petition that the petitioner should have been discharged from the county jail for want of prosecution, se, 2945.71 and 2945.73, see, also, Anthony Wolfe v. Michael Randle 267 F.Supp.2d 743.

4. The assistance prosecuting attorney Steven Gaul or Gall was assigned to prosecute this case. Nonetheless, the prosecutor never responded to any motions that was filed by the petitioner on May 28, 2010, see, Exhibit – (C) at page 2 through 5. However, on the 14th, of February some 10 months later petitioner's plea was entered at the age of sixteen (16). Nonetheless, the assigned prosecutor, dropped the case for reasons unknown, for at the petitioner's improper and unknowingly plea was enter another state attorney(sic)prosecutor named (Brian Radigan) stood at the plea hearing, in which "Mr. Radigan" had no knowledge of the insufficient of the evidence nor any knowledge of the case period, see, Exhibit – (C), at page 6 at February 14, 2010, this was a clear-cut of prosecutorial misconduct and violated the petitioner's Sixth Amendment rights of the United States Constitution see, Brady v. Maryland (1963), 373 U.S. 83; Martin v. Foltz (6th Cir.1985), 773 F.2d 711, 716-17, 642-43; Angel v. Overberg, 682 F2d 605, 607 (6th Cir.1982).

Doc. 5-1, pp. 28-30.  The State filed a response (Doc. 5-1, pp. 48-53 (Exhibit 10)) and the trial court denied the post-conviction petition on October 26, 2012.[3]  Doc. 5-1, p. 54 (Exhibit 11). Johnson did not pursue further appellate review of this decision.

### 2.    Second Petition

In the midst of pursuing his direct appeal (see below), Johnson filed a second pro se post-conviction petition on October 18, 2013, this time to vacate or set aside the judgment of conviction.  Doc. 5-1, pp. 304-08 (Exhibit 31).  He alleged ineffective assistance of counsel for

---

[3] The journal entry was docketed on November 1, 2012.  Doc. 5-1, p. 54.

failure to call witnesses, prepare for trial, or protect his speedy trial rights.  Doc. 5-1, p. 305.

The State and Johnson each filed briefs on the petition.  Doc. 5-1, pp. 309-23 (Exhibits 32, 33).

On February 21, 2014 the trial court denied Johnson's second petition for post-conviction relief

as untimely.[4]  Doc. 5-1, p. 324 (Exhibit 33).  Johnson did not seek further appellate review of

this decision.

## D.      Direct Appeal

On December 24, 2012, Johnson filed a pro se leave to appeal from his March 14, 2011,

conviction and sentence with the Eighth District Court of Appeals, Cuyahoga County, Ohio.

Doc. 5-1, pp. 55-66 (Exhibit 12).  On January 2, 2013 the court dismissed his appeal sua sponte

for failure to file a praecipe in accordance with with Local App. R. 9(B).  Doc. 5-1, p. 67

(Exhibit 13).

Thereafter, on January 9, 2013, Johnson again sought to appeal from his March 14, 2011,

conviction and sentence.  Doc. 5-1, pp. 68-85 (Exhibit 14), Doc. 5-1, pp. 86-93 (Exhibit 15).  He

filed a pro se notice of appeal (Doc. 5-1, pp. 68-85) and motion for leave to file a delayed

appealed (Doc. 5-1, pp. 86-93).  In his motion for leave to file a delayed appeal, Johnson asserted

that he had failed to perform his appeal as of right because the trial court failed to inform him of

his right to appeal, did not tell him of the thirty-day deadline to file a direct appeal, and failed to

appoint him appellate counsel.  Doc. 5-1, pp. 87-90.  On January 18, 2013, the Eighth District

Court of Appeals granted Johnson's motion and appointed counsel to take up his delayed direct

appeal.  Doc. 5-1, p. 94 (Exhibit 16), Doc. 5-1, p. 95 (Exhibit 17).

On June 25, 2013, Johnson's appellate counsel filed a brief, pursuant to *Anders v.*

*California*, 386 U.S. 738 (1967), asking the appellate court to independently review the record

---

[4] The journal entry was docketed on February 27, 2014.  Doc. 5-1, p. 324.

for error and requesting to withdraw as counsel.  Doc. 5-1, pp. 96-102 (Exhibit 18).   On July 11,

2013, the court of appeals allowed counsel to withdraw and gave Johnson time to file a pro se

brief.  Doc. 5-1, p. 103 (Exhibit 19).  Johnson's brief, filed on October 28, 2013, contained the

following assignments of error:

> 1. The juvenile court violated the Defendants Due Process Rights when it
>    transferred the Case to the Adult Court without an Amenability Hearing or a
>    valid waiver on the record.
>
> 2. The Trial Court violated the Defendant's Speedy Trial Rights when it failed to
>    give a legitimate reason as to why the continuance was granted and not stated
>    in open court on the record.
>
> 3. The Ineffective Assistance of counsel the Defendant received fell well below
>    the reasonable standard when trial counsel failed to protect the Defendant's
>    Due Process Rights, or at a minimum, to object to the transfer.

Doc. 5-1, pp. 104-14 (Exhibit 20).  The State filed its brief on November 18, 2013.  Doc. 5-1, pp.

115-23 (Exhibit 21).  On April 9, 2014, the court of appeals, acting sua sponte, appointed new

counsel for Johnson.  Doc. 5-1, p. 124 (Exhibit 22).  The juvenile court record and transcripts

were not made part of the appellate record before Johnson's previous counsel withdrew,

therefore the court of appeals could not conduct an independent review of the appeal and the

court found that new counsel was warranted.  Doc. 5-1, p. 124.

On June 30, 2014, Johnson's new counsel filed a brief (Doc. 5-1, pp. 125-86 (Exhibit

23)), raising the following assignments of error:

> 1. The juvenile court committed prejudicial error by allowing the decedent's
>    mother to testify and provide victim impact testimony at the amenability
>    hearing in juvenile court. *Juv. R. 30.*
>
> 2. The juvenile court abused its discretion and denied Appellant due process of
>    law by finding that Appellant was not amenable to rehabilitation in the juvenile
>    justice system.

3. Appellant received ineffective assistance of counsel in juvenile court in violation of his rights under the Sixth Amendment to the Constitution of the United States and Article I, Section 10, of the Constitution of the State of Oho.

    A. Failure to subpoena eyewitness who reported to the police that he saw someone other than Appellant shoot the decedent and failure to present that witness' testimony at probable cause hearing.

    B. Failure to inform Appellant, prior to his change of plea, of the existence of an eyewitness who reported to the police that he saw someone other than Appellant shoot the decedent.

    C. Failure to object to victim impact testimony at amenability hearing.

4. The trial court committed prejudicial error and denied Appellant due process of law by accepting his guilty plea without first fully advising him of his constitutional rights and determining he understood that, by entering his guilty plea, he was waiving an important constitutional right, to wit: the presumption of innocence. *Crim. R. 11(C). Fifth*, *Sixth*, and *Fourteenth Amendments*, Constitution of the United States; *Article I, §10* and *§16*, Constitution of the State of Ohio.

5. The trial court committed prejudicial error by failing to make the findings necessary to support the imposition of consecutive sentences.

Doc. 5-1, p. 129.  On July 3, 2014, Johnson, through counsel, supplemented his assignments of error as follows:

3. Appellant received ineffective assistance of counsel in juvenile court in violation of his rights under the Sixth Amendment to the Constitution of the United States and Article I, Section 10, of the Constitution of the State of Ohio.

    D. The failure of Appellant's counsel to seek a dismissal of the charges on speedy trial constituted ineffective assistance of counsel.

6. Ohio's refusal to provide the full protection of its speedy trial statute, *Ohio Rev. Code §2945.721*, to juveniles who are transferred to "adult court," for criminal prosecution, while providing such protection to adults and while providing limited protection to juveniles who are charged as serious youthful offenders, under *Ohio Rev. Code §2152.13*, constituted a denial of due process and equal protection of the laws.  Fourteenth Amendment to the Constitution of the United States; Article I, Section 2 and 16.

(Doc. 5-1, pp. 187-201 (Exhibit 24)).  On August 29, 2014, the State filed its brief.  Doc. 5-1, pp.

202-19 (Exhibit 25).  On January 15, 2015, the court of appeals overruled all of Johnson's

assignment of error (both pro se and counseled) and affirmed the trial court's judgment.  Doc. 5-

1, pp. 220-52 (Exhibit 26); *State v. Johnson*, 2015-Ohio-96.

On February 13, 2015, Johnson, acting pro se, filed a timely notice of appeal to the

Supreme Court of Ohio.  Doc. 5-1, p. 253 (Exhibit 27).  In his memorandum in support of

jurisdiction (Doc. 5-1, pp. 254-89 (Exhibit 28)), he raised the following propositions of law:

1. The judicial exclusion of juvenile's bound over as adults from the speedy trial protections codified in the Ohio Revised Code §2945.71 violates due process and equal protection rights of those adversely affected thereby.

2. The failure of trial counsel to file a motion to dismiss on speedy trial grounds falls below an objective standard of reasonableness for zealous representation and deprives the defendant of the effective assistance of counsel guaranteed by the State and Federal Constitutions.

3. Where a decision to bind over a juvenile offender to the jurisdiction of the Common Pleas Court is effected by an Amenability Determination that is not based upon a rational and factual basis to support it, the decision constitutes an abuse of discretion and violates the due process and equal protection rights of the defendant.

Doc. 5-1, p. 255.  On March 6, 2015, the State filed a memorandum in response to jurisdiction.

Doc. 5-1, pp. 290-302 (Exhibit 29).  The Supreme Court of Ohio declined to accept jurisdiction

on June 3, 2015.  Doc. 5-1, p. 303 (Exhibit 30).

**E.      Federal Habeas Corpus**

On August 31, 2016, Johnson, represented by counsel, filed his federal habeas

petition, asserting two grounds for relief, which are addressed below.  Doc. 1.

Respondent filed his Return of Writ on May 12, 2017.  Doc. 5.  On June 26, 2017,

Johnson filed a Traverse.  Doc. 7.

### III.     Law and Analysis

**A.  Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g., Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Petitioners have one year from the end of direct review of their conviction to bring a habeas petition.  28 U.S.C. § 2244(d)(1)(A).

**B.  Grounds for Relief**

    **1.  Ground One**

> **Ground One:** Mr. Johnson was denied his right to due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States by the State of Ohio's refusal to provide speedy trial protection to juveniles.

Doc. 1, p. 15.  Johnson presented Ground One in his sixth assignment of error raised on direct appeal to the Eighth District Court of Appeals (Doc. 5-1, p. 190) and as his first proposition of law in his memorandum in support of jurisdiction filed with the Supreme Court of Ohio (Doc. 5-1, p. 255).

    The court of appeals held that Johnson's guilty plea constituted a waiver of his statutory speedy trial rights.  *State v. Johnson*, 2015-Ohio-96, ¶ 71.  Johnson contends that the court failed to address his constitutional speedy trial rights, which he claims were not waived by pleading guilty.  Doc. 7, p. 4.

    As discussed below, Johnson waived the right to bring any speedy trial claim (constitutional or statutory) by pleading guilty and he has not shown that the state appellate court's finding of waiver was an unreasonable application of, or contrary to, clearly established federal law.  Furthermore, even if it was determined that Johnson did not waive the ability to raise a speedy trial claim, the court of appeals did address his constitutional claims on the merits, *Johnson*, 2015-Ohio-96, ¶¶ 65-68, and Johnson has not shown that the state appellate court's

determination regarding his speedy trial claim was an unreasonable application of, or contrary to, clearly established federal law.

    **a.** **Johnson waived his speedy trial rights by his knowing and voluntary guilty plea and has not shown that the state appellate court's waiver determination was an unreasonable application of or contrary to clearly established federal law**

In a trilogy of cases from 1970, the Supreme Court set out the general rule that, after pleading guilty, defendants waive claims based on pre-plea constitutional violations and may challenge only the voluntary and intelligent nature of their guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 262-67 (1973) (discussing *Brady v. United States* 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970)). In *Tollet*, the Supreme Court "reaffirm[ed] the principle recognized in the *Brady* trilogy[,]" namely,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.[5]

*Id*. at 267. The Supreme Court later outlined specific exceptions to this general rule. *See Blackledge v. Perry*, 417 U.S. 21, 29-31 (1974); *Menna v. New York*, 423 U.S. 61, 62 (1975). However, those exceptions are limited to claims that challenge a state's ability to bring charges against the defendant at all. *Menna*, 423 U.S. at 62 (citing *Blackredge*, 417 U.S. at 30). When finding that a defendant did not have a pretrial right to appeal a denial of a motion to dismiss an indictment based on an alleged violation of speedy trial rights, the Supreme Court held that "the

---

[5] When discussing the availability of federal collateral relief based on an alleged pre-plea constitutional violation, the Supreme Court had explained earlier that *McMann* provided that, "If a prisoner pleads guilty on advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases[.]'" *Tollett*, 411 U.S. at 266 (citing *McMann*, 397 U.S. at 771).

Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried[.]'" *United States v. MacDonald*, 435 U.S. 850, 861 (1978). Consistent with this principle, courts have held that "the right to a speedy trial is not a jurisdictional issue." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) and *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984); *see also United States v. Coffin*, 76 F.3d 494, 496 (2nd Cir. 1996); *U.S. v. Acosta*, 1993 WL 539252, *1 (6th Cir. Dec. 29, 1993) (relying on cases from the fifth and tenth circuits); *Herron v. Kelly*, 2013 U.S. Dist. LEXIS 89754, *17 (N.D. Ohio, June 26, 2013).  Thus, since the right to a speedy trial is non-jurisdictional, it does not fall within the exceptions laid out by the Supreme Court and an unconditional guilty plea constitutes a waiver of alleged speedy trial deprivations.  *See Herron v. Kelly*, 2013 U.S. Dist. LEXIS 89754, *17 (N.D. Ohio, June 26, 2013); *see also Washington v. Sobina*, 475 F. 3d 162,166 (3rd Cir. 2007); *Howard*, 76 F. App'x at 53; *Yunis*, 723 F.2d at 796.

Petitioner does not contend that his guilty plea was made unknowingly or involuntarily. In his Traverse, he correctly asserts that, while a guilty plea generally prevents a defendant from raising pre-plea constitutional issues on appeal, that rule is not absolute.  Doc. 7, p. 3-4. However, as explained above, speedy trial rights do not fall within the exceptions laid out by the Supreme Court.  Petitioner cites *Lefkowitz v. Newsome*, 420 U.S. 283, 292-93 (1975) for the proposition that, if state law permits a defendant who pleads guilty to appeal issues after a plea, a federal court may review those issues in a habeas proceeding.  Doc. 7, p. 4.  He acknowledges that, under Ohio law, a defendant who pleads guilty waives the right to appeal *statutory* speedy trial issues, but then cites several Ohio Eighth District Court of Appeals cases which have allowed a defendant to bring a claim based on *constitutional* speedy trial rights.  Doc. 7, p. 4.

However, Petitioner interprets both *Lefkowitz* and "state law" too broadly. *Lefkowtiz* concerned a New York statute that allowed post- guilty plea appeals of an order denying a motion to suppress evidence allegedly obtained as a result of unlawful search and seizure. *Lefkowitz*, 420 U.S. at 285. The Supreme Court held that, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Id*. at 293. Justice Stewart explained that, while a guilty plea normally forecloses the possibility of constitutional challenges to a conviction, New York has "chosen not to treat a guilty plea as such a 'break in the chain of events' with regard to certain types of constitutional claims raised in pretrial proceedings." *Id.* at 289. Thus, the effect of New York's statute was that a defendant's guilty plea had "legal consequences quite different from the consequences of the pleas entered in traditional guilty-plea cases." *Id*. at 290.

The Sixth Circuit considered and found unavailing a federal habeas petitioner's reliance on *Lefkowtiz* in *Werth v. Bell*, 692 F. 3d 486, 497-98 (6th Cir. 2012). In *Werth*, the habeas petitioner cited an unpublished, Michigan appellate court opinion and claimed that, under *Lefkowitz* he had a right to raise his right to self-representation on appeal after pleading guilty. *Id*. at 497. The court explained that *Lefkowitz* clearly applies to state statutory law, perhaps to holdings of a state supreme court, but not to intermediate state appellate decisions and certainly not to unpublished cases. *Id*. at 498. Thus, the court concluded that the habeas petitioner did not qualify for the exception carved out by *Leftkowitz*. *Id.* For reasons discussed below, the undersigned finds that Johnson's reliance upon *Leftkowtiz* is similarly misplaced.

Ohio has no statutory provisions similar to the one in *Lefkowitz*. The Ohio Eighth District Court of Appeals historically appears to separate statutory speedy trial rights from

constitutional speedy trial rights, finding that statutory speedy trial rights are waived by a guilty plea while constitutional speedy trial rights are not.  *See State v. Kutkut*, 2013-Ohio-1442, ¶ 9; *State v. Ennist*, 2008-Ohio-5100 ¶ 13.  However, this approach conflicts with that taken in other Ohio appellate districts as well as in many federal circuits.  *See State v. Johnson*, 2013-Ohio-4077 ¶¶ 4, 5, n. 4 (and cases cited therein) (acknowledging split in Ohio appellate courts on the issue and explaining that both state and federal case law supports the conclusion that constitutional speedy trial rights are waived by a guilty plea).  The fact that an Ohio appellate district has allowed defendants to bring constitutional speedy trial challenges after a guilty plea is not the equivalent of a "state law permit[ting] a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues." *Lefkowitz*, 420 U.S. at 293.  *See Werth*, 692 F. 3d at 498.  Accordingly, the undersigned finds that Johnson's reliance upon *Leftkowitz* to claim that his guilty plea does not bar him from asserting a federal habeas claim based on an alleged violation of his constitutional right to a speedy trial is without merit.

Petitioner waived his speedy trial rights by his knowing and voluntary guilty plea. *Sobina*, 475 F. 3d at 166; *Howard*, 76 F. App'x at 53; *Herron*, 2013 U.S. Dist. LEXIS 89754 at *17.  *See also Drumm v. Parke*, 1990 U.S. App. LEXIS 2353 *2 (6th Cir. Feb 16, 1990) (affirming district court's denial of petitioner's speedy trial claim because he waived his right to a speedy trial when he pled guilty and "[t]he law is clearly established that a defendant who enters a guilty plea waives all nonjurisdictional defects, included alleged violations of constitutional rights[]").  Johnson has not shown that his situation fits into any of the exceptions to this general rule.   Nor has he shown that the state court of appeals' determination that, by pleading guilty, he waived his right to raise a speedy trial challenge was an unreasonable application of or contrary to clearly established federal law.

**b.  The state court's decision on the merits of Johnson's speedy trial claim was not an unreasonable application of or contrary to clearly established federal law**

Even if Johnson had not waived his right to raise speedy trial issues, he has not shown that the state appellate court's determination of his constitutional claim was contrary to clearly established federal law.  Johnson states that "[h]e is not seeking to have this Court review the state court's application of its speedy trial law, R.C. 2945.71(E)[,]" rather, his claim is based on "the State of Ohio's refusal to provide juveniles with any speedy trial protections."  Doc. 7, p. 3.  He contends that the court of appeals did not address his argument that Ohio denied his due process rights by failing to provide any juveniles with speedy trial rights.  Doc. 1, pp. 18-19; Doc. 7, p. 6.  However, the court did address his constitutional claim:

> {¶ 65} Johnson argues in his sixth assignment of error that Ohio courts should extend the full protection afforded under R.C. 2945.71 (speedy trial time) to juveniles. He essentially contends that his speedy trial rights were violated based on the amount of days that he was held in juvenile court prior to the court ordering his transfer to adult court.

> {¶ 66} Statutory speedy trial time periods do not apply to cases initiated in juvenile court. *State ex rel. Williams v. Court of Common Pleas*, 42 Ohio St.2d 433, 434-435, 329 N.E.2d 680 (1975). The Ohio Supreme Court explained as follows:

>> The time limits set forth in R.C. 2945.71(C) apply only to a "(a) person against whom a charge of felony is pending * * *." A juvenile who has lodged against him an affidavit alleging that he is delinquent because he committed an act which, if committed by an adult, would constitute a felony is not a person against whom a charge of felony is pending. The juvenile becomes such a person and is, therefore, included with the scope of R.C. 2945.71(C) only if and when the Juvenile Court relinquishes jurisdiction over the case and transfers it to the appropriate "adult" court.

> (Citations omitted.) *Id*.

> {¶ 67} Without citing any authority, Johnson contends that excluding juveniles from the protection of this law violates his constitutional rights. We disagree. Indeed, "[g]iven that the Supreme Court of Ohio has concluded that Ohio's speedy trial statute is inapplicable to juvenile offenders similarly situated to appellant, we cannot conclude that such a holding violates appellant's right to equal protection under the law." *In re Milgrim*, 8th Dist. Cuyahoga No. 77510, 2001 WL 112123 (Feb. 8, 2001).

{¶ 68} The sixth assignment of error is overruled.

*Johnson*, 2015-Ohio-96, ¶¶ 65-68, 27 N.E.3d 9, 22-23 (2015).  While the court of appeals did not

explicitly use the phrase "due process" in its analysis, a state court need not specifically state its

reasoning in order for court have adjudicated a federal claim on the merits.  *Brown v. Bobby*, 656

F.3d 325, 329 (6th Cir. 2011); *see also David v. Johnson*, 661 Fed. App'x 869, 878 (6th Cit.

2016), *cert. denied*, *Davis v. Genovese*, 137 S. Ct. 1829 (2017).  When a petitioner has presented

a federal claim "to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."  *Brown*, 661 Fed. App'x at 656 F.3d at 329 (quoting

*Harrison v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011)).  This

presumption also applies when the state court addressed some of the defendant's claims but not a

claim that is later brought in a federal habeas proceeding.  *Johnson v. Williams*, 568 U.S. 289,

292 (2013).  This presumption may be overcome if the petitioner shows that some other

explanation for the state court's decision is more likely.  *Brown*, 656 F. 3d at 329; *Richter*, 562

U.S. at 99.  Johnson has not put forth any explanation to rebut the presumption that the state

court adjudicated his constitutional speedy trial claim on the merits.  Noting that Johnson cited

no authority, the state court of appeals considered and rejected Johnson's claim that "excluding

juveniles from the protection of this law violates his constitutional rights."  *Johnson*, 2015-Ohio-

96, ¶¶ 65-68.  Accordingly, the Court should apply AEDPA deference to his claim.  Applying

said deference, habeas relief is warranted only if the state court's denial of his due process claim

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).

In his Petition, Johnson attempts to explain why denying juveniles speedy trial rights is

contrary to clearly established federal law.  However, he concedes that "none of the cases

discussed [by Petitioner] specifically state that juveniles are afforded speedy trial rights."  Doc.

1, p. 16.  He nonetheless seeks to infer speedy trial rights for juveniles from a line of cases

following *In re Gault*, 387 U.S. 1 (1967).  The Supreme Court in *Gault* held that juveniles are

entitled to certain due process protections: adequate notice of the charges, the right to counsel,

the right to cross-examination and confrontation, and the privilege against self-incrimination.

387 U.S. at 32-57.  The case did not consider speedy trial rights.  Later Supreme Court cases

have addressed different due process rights asserted by juveniles.  *See McKeiver v. Pa.*, 403 U.S.

528 (1971) (declining to extend the right to a jury trial to juveniles); *In re Winship*, 397 U.S. 358,

368 (1970) (holding that the standard of proof for juveniles must be proof beyond a reasonable

doubt).  Johnson attempts to broaden the Supreme Court's holding in *Schall v. Martin*, 467 U.S.

253, 273 (1984) to throw doubt on the constitutionality of his own detention period.  In *Schall*,

the Court affirmed a New York statute authorizing pre-trial detention of juvenile offenders who

posed a "serious risk" of committing crime before reappearing in court.  *Id*. at 255-57.  The

Court acknowledged that, in some instances, "detention of a juvenile would not pass

constitutional muster" and stated that "the validity of those detentions must be determined on a

case-by-case basis."  *Id*. at 273.  As discussed above, to the extent Johnson suggests *Schall*

requires the Court to decide whether any constitutional rights were violated in his particular case,

he waived the right to bring claims based on alleged violations of his speedy trial rights when he

entered a guilty plea.  To the extent he suggests that *Schall* somehow extends speedy trial rights

to juveniles, his argument does not follow from the language of the case and falls short of the

Supreme Court's standard for what constitutes clearly established law.

Johnson cites two Sixth Circuit cases as saying that clearly established law does not

require an "explicit statement of a particular rule" and includes "not only bright-line rules but

also the legal principles and standards flowing from precedent."  Doc. 1, p. 16 (citing *Ruimveld*

*v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005), quoting *Taylor v. Withrow*, 288 F.3d 846, 852

(6th Cir. 2002)).  The Court is unpersuaded by Johnson's argument to greatly expand the

definition of "clearly established law."  In reversing the Sixth Circuit, the Supreme recently

reiterated what is meant by "clearly established federal law," finding that:

> The Sixth Circuit should not have affirmed the *Cronic*-based grant of habeas relief
> in this case. The Michigan Court of Appeals' decision was not contrary to any
> clearly established holding of this Court. We have never addressed whether the rule
> announced in *Cronic* applies to testimony regarding codefendants' actions. . . .
> Because none of our cases confront "the specific question presented by this case,"
> the state court's decision could not be "contrary to" any holding from this Court.
> *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam). . . . [I]f the circumstances of a
> case are only "similar to" our precedents, then the state court's decision is not
> "contrary to" the holdings in those cases. *See, e.g.*, *Carey v. Musladin*, 549 U.S. 70,
> 76-77 (2006).

*Woods v. Donald*, 135 S.Ct. 1372, 1377 (2015).

The cases Petitioner cites to imply a speedy trial right for juveniles do not address "the

specific question presented by this case."  Therefore, he is unable to demonstrate that the state

court of appeals' determination that there was no violation of his constitutional right to a speedy

trial was contrary to clearly established federal law.  Moreover, as explained above, Johnson

waived his right to bring a claim related to speedy trial issues when he pleaded guilty and he has

failed to show that the state court of appeals' waiver determination was an unreasonable

application of or contrary to clearly established federal law.

Based on the foregoing the undersigned recommends that the Court **DISMISS** Ground

One because, by virtue of his guilty plea, Johnson waived his right to bring a claim based on

alleged violations of his statutory or constitutional speedy trial rights; alternatively, the Court

should **DENY** Ground One because Johnson has failed to demonstrate that the state court of

appeals' determination regarding his speedy trial claims was an unreasonable application of, or contrary to, clearly established federal law.

### 2. Ground Two

> **Ground Two:** Mr. Johnson's trial counsel provided ineffective assistance in violation of the Sixth Amendment; had counsel filed a motion to dismiss, the motion would have been granted and Mr. Johnson would have been released.

Doc. 1, p. 19. Johnson presented Ground Two in his third assignment of error raised on direct appeal to the Eighth District Court of Appeals (Doc. 5-1, pp. 129, 190) and as his second proposition of law in his memorandum in support of jurisdiction filed with the Supreme Court of Ohio (Doc. 5-1, p. 255). The Eighth District Court of Appeals addressed Ground Two as follows:

> {¶ 56} As his final grounds in support of his claim of ineffective assistance of counsel, Johnson argues that his trial counsel was ineffective in failing to file a motion to dismiss on speedy trial grounds. Johnson, however, fails to demonstrate how his speedy trial rights were violated. He appears to rely on the fact that this court found that the speedy trial rights of his codefendant, D.S., were violated in *In re D.S.*, 8th Dist. Cuyahoga No. 97757, 2012-Ohio-2213, 2012 WL 1806854, and therefore this court should apply the same holding here. But *In re D.S.* involves a completely separate procedurally [sic] history unique to D.S., including that D.S. never entered a guilty plea nor executed a waiver of speedy trial time. Moreover, Johnson pleaded guilty and therefore has waived any claim of ineffective assistance of counsel based upon the trial counsel's failure to file a motion to dismiss on speedy trial grounds. *State v. Miller*, 8th Dist. Cuyahoga No. 94790, 2011-Ohio-928, 2011 WL 743128, ¶ 16 ("A guilty plea also waives claims of ineffective assistance of counsel based upon statutory speedy trial issues").

*State v. Johnson*, 2015-Ohio-96, ¶ 56. The court of appeals applied state law to the issue but federal law leads to the same result: a defendant who pleads guilty waives most claims of ineffective assistance of counsel. As explained above, a defendant who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea. . ." *Tollet*, 411 U.S. at 267. *See United States v. Stiger*, 20 Fed.

App'x 307, 308-09 (6th Cir. 2001) (holding that defendant waived his ineffective assistance of counsel claim by pleading guilty); *United States v. Martin*, 2009 U.S. Dist. LEXIS 62268 *9-11 (N.D. Ohio July 21, 2009) (finding that a guilty plea bars claims of pre-plea constitutional deprivations, including ineffective assistance of counsel).

Johnson does not allege that his guilty plea was involuntary or unknowing.  He bases his claim solely on trial counsel's failure to file a motion to dismiss based on a violation of his constitutional speedy trial rights and argues that the state court erred by not addressing the issue under *Strickland v. Washington*, 466 U.S. 668 (1984).  Doc. 7, p. 6.  As addressed above, Johnson waived *all* speedy trial rights by pleading guilty and he also waived an ineffective assistance of counsel claim based on speedy trial issues.  Further, he has not shown that the state court of appeals' waiver determination was an unreasonable application of, or contrary to, clearly established federal law.

Even if Johnson had not waived this claim by pleading guilty, and even applying the constitutional ineffective assistance of trial standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984) as he requests, his ineffective assistance of counsel claim fails.   He has not shown that 1) his trial counsel's representation fell below an objective standard of reasonable ness, and 2) that counsel's deficient performance prejudiced him.  *Id*. at 688, 693.

Johnson argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel did not file a motion to dismiss based on speedy trial violations. However, as Johnson acknowledges, "counsel cannot be said to be deficient for failing to take frivolous action."  Doc. 1, p. 20 (quoting *United States v. Carter*, 355 F. 3d 920, 924 (6th Cir. 2004)).  A motion to dismiss based on speedy trial violations would have been denied by the trial court because Ohio law does not extend speedy trial protections to juveniles until they are bound

over to adult court.  *State ex rel. Williams v. Court of Common Pleas*, 42 Ohio St.2d 433, 434-35 (1975).  Johnson's challenge is to the time he was held in juvenile detention, i.e., 199 days prior to being transferred to adult court (Doc. 1, p. 20); so that challenge does not fall under Ohio's speedy trial statute.[6]

Johnson applies the factors set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), i.e., length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant, to argue that his motion to dismiss would have been granted because the time he spent detained as a juvenile violated his constitutional speedy trial rights.  Doc. 1, pp. 22-25.  First of all, as explained above, there is no clearly established federal law establishing that juveniles have a constitutionally protected right to a speedy trial.  Secondly, the length of time Johnson spent in detention as a juvenile (199 days or six-and-one-half months) does not meet the threshold requirement to trigger a *Barker* analysis.  "The length of the delay is a threshold requirement.  If the length of the delay is not 'uncommonly long,' then judicial examination ends."  *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. 647, 652 (1992)). While delays approaching one year are considered presumptively prejudicial depending on the nature of the charges, *Doggett*, 505 U.S. at 652, n.1; *Maples*, 427 F.3d at 1026, those of a lesser duration are not per se excessive.  *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive); *United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay did not rise to the level of a constitutional violation); *Wilcher v. Rose*, 85 F.3d 630, 1996 WL 262951, at *1 (6th Cir. 1996) (unpublished), (ten-and-one-half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

---

[6] As discussed in the procedural history section above, once transferred to adult court, Johnson executed more than one speedy trial waiver.  Doc. 5-1, pp. 12, 20, 21.

Considering the foregoing, Johnson is unable to show that a motion to dismiss based on his speedy trial rights would have been granted.  Therefore, it cannot be said that his counsel's actions fell below an objective standard of reasonableness or that the alleged deficient performance prejudiced him.

Johnson waived the right to bring an ineffective assistance of counsel claim by entering a knowing and voluntary guilty plea and he has not shown that the state court of appeals' waiver determination was an unreasonable application of or contrary to clearly established federal law. Further, even if he had not waived the claim, he has failed to show that his counsel rendered constitutionally ineffective assistance of counsel by not filing a motion to dismiss based on alleged speedy trial violations.

For these reasons, the undersigned recommends that the Court **DISMISS** Ground Two because, by virtue of his guilty plea, Johnson's waived his right to bring a claim of alleged ineffective assistance of counsel; alternatively, the Court should **DENY** Ground Two because Johnson is unable to demonstrate ineffective assistance of counsel under *Strickland*.

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS**

and/or **DENY** Johnson's Petition (Doc. 1).


Dated: August14, 2018

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge


### <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).